UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SARA EAGER,

                Plaintiff,

v.

JEFFERSON CAPITAL
SYSTEMS, LLC,

                Defendant.

_____/

## Complaint

### I.     Introduction

1. This is an action for damages brought against a debt collector for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Michigan Collection Practices Act ("MCPA"), M.C.L..§ 445.251 *et seq.,* and Michigan Occupational Code ("MOC") M.C.L. § 339.901 *et seq.*

### II.    Jurisdiction

2. This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

### III.   Parties

3. Plaintiff Sara Eager is a natural person residing in Kent County, Michigan. Ms. Eager is a "consumer" and "person" as the terms are defined and used in the FDCPA. Ms. Eager

is a "consumer," "debtor" and "person" as the terms are defined and used in the MCPA and MOC.

4.      Defendant Jefferson Capital Systems, LLC ("JCS") is a Georgia limited liability company. In 2003, JCS applied for and received a Certificate of Authority to Transact Business in Michigan for the stated purpose of "Financial Services." The registered agent for JCS in Michigan is CSC-Lawyers Incorporating Service (Company), 601 Abbott Road, East Lansing, Michigan 48823. JCS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. JCS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. JCS is a "debt collector" as the term is defined and used in the FDCPA. JCS is a "regulated person" as the term is defined and used in MCPA. JCS is licensed (No. 2401001842) by the State of Michigan to collect consumer debts in Michigan. JCS is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

**IV.     Facts**

5.      On or about December 30, 2005, Ms. Eager opened a credit account (No. XXXXXXXXXXXX0693) with Imagine MasterCard, First Bank of Delaware and/or CompuCredit. Ms. Eager used the account to purchase goods and/or services for personal, family and household purposes. Any resulting obligation of Ms. Eager to pay money was a "debt" as the term is defined and used in the FDCPA, MCPA and MOC.

6.      Ms. Eager became injured, disabled, unemployed and unable to make monthly payments to Imagine MasterCard.

7.      Prior to June 30, 2006, Ms. Eager defaulted on her account with Imagine

MasterCard.

8.      On or about June 30, 2006, Imagine MasterCard charged off Ms. Eager's account.

9.      In or about 2006, JCS purchased a portfolio of charged-off accounts, which included Ms. Eager's Imagine MasterCard account.

10.     JCS paid less than $25.00 for Ms. Eager's account, pro-rata.

11.     It has been more than six years since Ms. Eager made any payment to Imagine MasterCard or to any other entity in connection with her Imagine MasterCard account.

12.     Any debt that Ms. Eager may have incurred in connection with her Imagine MasterCard account is no longer judicially enforceable by operation of the applicable statute of limitation. Stated differently, the debt is time-barred.

13.     By letter dated February 19, 2013, JCS wrote Ms. Eager and demanded payment of the alleged debt. The letter invited Ms. Eager to telephone JCS to discuss the matter. A copy of the letter is attached hereto as Exhibit A.

14.     On or about March 5, 2013, Ms. Eager spoke by telephone with a JCS employee identified as "Kathy" with a direct line of 800-348-3381. Ms. Eager stated that she was responding to a letter received from JCS. The JCS employee stated that Ms. Eager had opened an account with Imagine MasterCard on December 30, 2005, that Imagine MasterCard had charged off the account on June 30, 2006, that JCS had purchased Ms. Eager's Imagine MasterCard account in 2006, and that Ms. Eager owed JCS the sum of $817.88, Ms. Eager asked the JCS employee for the full account number. The JCS employee stated that JCS could only provide Ms. Eager with the last four digits of the account number. The JCS employee stated that on February 22, 2013, JCS had reported the account and related debt to the credit bureaus. The

3

JCS employee stated that on March 22, 2013, JCS intended to again report the account and related debt to the credit bureaus. Ms. Eager stated that she would investigate the matter and call the JCS employee back at a later time.

15.     On or about March 11, 2013, Ms. Eager called JCS at 800-348-3381 and spoke with a JCS employee. Ms. Eager stated that she was calling back as she said she would. In the ensuing conversation, the JCS employee made the following representations:

a)     JCS would provide Ms. Eager with only the last four digits of the account number.

b)     "But if you are wondering whether it's reporting on your credit report, I do show that we are currently reporting the account."

c)     If Ms. Eager wished to dispute the account, Ms. Eager should refer to the back of the letter sent by JCS to Ms. Eager.

d)     To dispute the debt, Ms. Eager was required to mail any documents she might have to JCS at its address in St. Cloud, Minnesota.

e)     "All I can do is notate [sic] what you're telling me." But Ms. Eager's oral dispute "doesn't go any further that that. Unless you send something in writing."

f)     "The last time it reported [to Ms. Eager's credit] was February 22. It's usually every thirty days."

Ms. Eager stated: "When your company reports this debt next week, I want you to be sure that you let the credit bureaus know I'm disputing this debt." The JCS employee replied:

g)     "Like I said ma'am, if you're gonna go about disputing the account, you'd want to send any documentation you may have to the St. Cloud, Minnesota address. All I can do is notate [sic] it. Unfortunately, they need something in order to go

4

forward from there, because the dispute is not done over the phone, it's in writing."

16.     The FDCPA does not require the consumer to provide *any reason at all* in order to dispute a debt. *Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234 (D. Haw. 2002); *(Mendez v. M.R.S. Assoc.*, 2004 WL 1745779 *2 (N.D. Ill. Aug. 3, 2004) (a consumer is entitled to dispute the validity of a debt for a good reason, a bad reason, or no reason at all); *Whitten v. ARS National Servs. Inc.*, 2002 WL 1050320 *4 (N.D. Ill. May 23, 2002) (imposing a requirement that a consumer have a 'valid' reason to dispute the debt is inconsistent with FDCPA); *Castro v. ARS National Servs., Inc.*, 2000 WL 264310 (S.D.N.Y. Mar. 8, 2000); *Frey v. Satter, Beyer & Spires*, 1999 WL 301650 (N.D. Ill. May 3, 1999); *DeSantis v. Computer Credit, Inc.*, 269 f.3d 159 (2nd Cir. 2001); *Mejia v. Marauder Corporation*, 2007 WL 806486 (N.D. Cal. 2007) (unlawful to suggest that proof of payment required for dispute).

17.     Credit reporting by a debt collector constitutes an attempt to collect a debt. *See, e.g., Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993)(a creditor's report of a debt to a consumer reporting agency is a "powerful tool, designed, in part, to wrench compliance with payment terms from its cardholder"); *Matter of Sommersdorf*, 139 B.R. 700, 701 (Bankr.S.D. Ohio 1991); *Ditty v. CheckRite, Ltd.*, 973 F.Supp. 1320, 1331 (D.Utah 1997). Debt collectors frequently will threaten to harm the consumer's credit as a cost effective way to coerce payment of a small debt. However, Congress has placed limit on that collection tool

18.     Two consumer protection laws, the FDCPA (regulating debt collection) and the Fair Credit Reporting Act ("FCRA") (regulating credit reporting) work together to empower the consumer to mitigate the harm that a debt collector can do to the consumer's credit.

5

19.     The FDCPA makes it unlawful for a debt collector to communicate or threaten to communicate to any person credit information which is known or which should be known to be false, "including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8).

20.     The FDCPA does not require the consumer to dispute the debt in writing in order to invoke the protections of 15 U.S.C. § 1692e(8). *See, Brady v. The Credit Recovery Company, Inc.*, 160 F.3d 64 (1st Cir. 1998).

21.     The FDCPA contains no limitation on the time during which a consumer may dispute a debt and trigger a debt collector's obligation to comply with 15 U.S.C. § 1692e(8).

22.     The FCRA states that if a consumer has disputed a debt with the creditor or other furnisher of information (such as a debt collector), the furnisher may not report the debt to a consumer reporting agency unless it also discloses that the debt is disputed by the consumer. 15 U.S.C. § 1681s-2(a)(3). In turn, the consumer reporting agency must note in future consumer reports containing information regarding the account that the consumer disputes the debt.

23.     It is unlawful for a debt collector to use "any false representation or deceptive means to collect or attempt to collect any debt. . . ." 15 U.S.C. § 1692e(10).

24.     It is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken. 15 U.S.C. § 1692e(5).

25.     JCS and its employee made false representations to Ms. Eager regarding the rights of a consumer to dispute a debt as afforded by the FDCPA and Michigan law.

26.     JCS and its employee made false representations to Ms. Eager regarding Ms. Eager's rights to dispute the debt.

6

27.    JCS and its employee falsely represented to Ms. Eager that Ms. Eager could not dispute the debt by telephone.

28.    JCS and its employee falsely represented to Ms. Eager that to dispute the debt, Ms. Eager was required to dispute the debt in writing.

29.    JCS and its employee falsely represented to Ms. Eager that to dispute the debt with JCS, Ms. Eager was required to mail documents to JCS to support her dispute.

30.    JCS and its employee falsely represented to Ms. Eager that to dispute the debt with JCS, Ms. Eager was required to provide a valid reason for his dispute.

31.    JCS and its employee falsely represented to Ms. Eager that in order to dispute the debt, Ms. Eager was required to communicate his dispute in writing to JCS.

32.    JCS and its employee falsely and wrongfully represented to Ms. Eager that JCS intended on March 22, 2013 to re-report information regarding the account to the consumer reporting agencies, but that JCS would not communicate Ms. Eager's oral dispute to the consumer reporting agencies.

33.    JCS and its employee falsely and wrongfully represented to Ms. Eager that JCS intended on March 22, 2013 to re-report information regarding the account to the consumer reporting agencies, but that JCS would not communicate Ms. Eager's dispute to the consumer reporting agencies unless Ms. Eager mailed documents to JCS to support her dispute.

34.    JCS and its employee threatened to take action that cannot legally be taken or that was not intended to be taken.

35.    Each false representation and false implication regarding the dispute process and credit reporting, made by JCS and its employee, would tend to mislead or confuse the reasonable,

least sophisticated consumer.

36.     The reasonable, least sophisticated consumer, could be mislead, confused and coerced into paying a disputed debt, upon hearing the false representations and false implications made by JCS and its employee. Stated differently, the misrepresentations made to Ms. Eager by JCS and its employee were material misrepresentations.

37.     Each JCS employee who spoke by telephone with Ms. Eager intended to speak to Ms. Eager the words that the JCS employee spoke to Ms. Eager.

38.     The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

39.     JCS, to increase its business and profits, has knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

40.     The acts and omissions of JCS and its employee done in connection with efforts to collect the alleged debt from Ms. Eager were done intentionally and wilfully.

41.     JCS and its employee intentionally and wilfully violated the FDCPA, MCPA and MOC.

42.     As an actual and proximate result of the acts and omissions of defendant and its employees, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment and suffering

for which she should be compensated in an amount to be established by jury and at trial.

**V.      Claims for Relief**

**Count 1– Fair Debt Collection Practices Act**

43.      Plaintiff incorporates the foregoing paragraphs by reference.

44.      Defendant has violated the FDCPA. Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)      Defendant violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)      Defendant violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt; and

c)      Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff.

**Wherefore,** plaintiff seeks judgment against defendant for:

a)      Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)      Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)      Such further relief as the court deems just and proper.

**Count 2– Michigan Collection Practices Act**

45.      Plaintiff incorporates the foregoing paragraphs by reference.

46.      Defendant has violated the MCPA. Defendant's violations of the MCPA

9

include, but are not necessarily limited to, the following:

    a)      Defendant violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

    b)      Defendant violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; and (ii) the legal rights of a creditor or debtor;

    c)      Defendant violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

    d)      Defendant violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendant for:

    a)      Actual damages pursuant to M.C.L. § 445.257(2);

    b)      Treble the actual damages pursuant to M.C.L. § 445.257(2);

    c)      Statutory damages pursuant to M.C.L. § 445.257(2); and

    d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2).

### Count 3 – Michigan Occupational Code

47.     Plaintiff incorporates the foregoing paragraphs by reference.

48.     Defendant has violated the MOC. Defendant's violations of the MOC include, but are not necessarily limited to, the following:

    a)      Defendant violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

    b)      Defendant violated M.C.L. § 339.915(f) by misrepresenting in a communication

with a debtor the following: (i) the legal status of a legal action being taken or threatened and (ii) the legal rights of a creditor or debtor;

c)      Defendant violated M.C.L. § 339.915(n) by using a harassing, oppressive and abusive method to collect a debt; and

d)      Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendant for:

a)      Actual damages pursuant to M.C.L. § 339.916(2);

b)      Treble the actual damages pursuant to M.C.L. § 339.916(2);

c)      Statutory damages pursuant to M.C.L. § 339.916(2); and

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).


**Demand for Trial by Jury**

Plaintiff demands trial by jury.

Dated: April 15, 2013

Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com